**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LAFAYETTE LINEAR,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case Number 15-CV-7653** |
| | ) | |
| **VILLAGE OF UNIVERSITY PARK,** | ) | **Hon. Harry D. Leinenweber** |
| **ILLINOIS, an Illinois Home Rule** | ) | **Judge Presiding.** |
| **Municipality, and VIVIAN COVINGTON,** | ) | |
| **Mayor of UNIVERSITY PARK, ILLINOIS**, | ) | **JURY TRIAL DEMANDED**. |
| | ) | |
| Defendants. | ) | |

## LINEAR'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Due process requires the state to provide a hearing before stripping someone of a protected property right. The Defendants refused Linear that opportunity for no reason. Attempting to avoid these realities, the Defendants pin their hopes on *Michalowicz v. Village of Bedford Park,* 528 F.3d 530 (7th Cir. 2008). But *Michalowicz* is distinguished because that plaintiff received everything Linear did not: notice, a pre-termination hearing, and a post-termination hearing. Linear was summarily fired, and when he twice sought a hearing, the Defendants did not bother to respond. Summary judgment for the Defendants is thus improper.

ARGUMENT

A.     The Defendants' anemic legislative immunity assertion is waived, and even if considered, fails.

The Defendants contend legislative immunity defeats Linear's claim. Motion at 5, n. 1. Buried in a three-sentence footnote, this argument is waived as a matter of law. The Seventh Circuit holds that a party can waive an argument by presenting it only in an undeveloped footnote. *Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013). *See also Parker v. Franklin Cnty. Cmty. Sch. Corp.,* 667 F.3d 910, 924 (7th Cir. 2012) (argument relegated to a footnote is waived); *Long v. Teachers' Ret. Sys. of Illinois,* 585 F.3d 344, 349 (7th Cir. 2009) (same).

Also imperiling the Defendants' legislative immunity argument is its terseness. Light on reasoning and heavy on conclusion, the argument is further waived under Seventh Circuit precedent. *See United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal argument, really nothing more than an assertion, does not preserve a claim."). The Defendants thus waive their legislative immunity assertion.

Even if the Court considers Defendants' argument, they fare no better. Defendants contend "local legislators are absolutely immune from suit under § 1983 for their legislative activities," and incorrectly cite to "*Brogan" v. Harris*, 523 U.S. 449 (1998). The case is actually *Bogan v. Harris*, and it is found at page 44 of the U.S. reports. *Bogan* is limited to acts completely within the legislative sphere and applies only to suits seeking

to impress individual liability. As many federal courts hold, "[t]here are two reasons why common law legislative immunity has no application to this case. First, such immunity only extends to Board members sued in their individual capacities, and does not shield the County and the Board, as entities, from constitutional review of their actions. Second, legislative immunity only applies to activities integral to the legislative process and does not embrace non-legislative acts such as opening prayers." *Doe v. Pittsylvania Cnty.,* 842 F.Supp.2d 906, 916 (W.D. Va. 2012). Further, the Supreme Court "has left no doubt that municipalities and local governments are not entitled to immunity from suits under section 1983." *Berkley v. Common Council of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995). *Berkley* concluded that a municipality is not immune from section 1983 liability for unconstitutional legislative activities. 63 F.3d at 296. *Berkley* explained:

> Our holding today that a municipality does not enjoy immunity with respect to the acts of its legislative body . . . should come as no surprise. In fact, every other circuit that has considered this issue has either held or presumed that a municipality is not entitled to absolute legislative immunity for suits brought under section 1983.

*Id.* at 300.

Here, the Mayor is sued in her official capacity and there is no immunity.[1]

B.     Linear's procedural due process rights were eviscerated.

Defendants next argue that due process concerns are not implicated. First, they raise a red herring—that because Linear did not challenge the constitutionality of the

---

[1]   Linear agrees that Mayor Covington was sued solely in her official capacity.

applicable ordinances, there is no substantive due process claim. But Linear has never raised a substantive due process claim and does not advance such a claim now.

Defendants then argue that because an adequate state-law remedy was "available," *i.e.* the Illinois Administrative Review Act ("ARA"), 735 ILCS 5/3-101, Linear's due process claims fail, relying solely on *Michalowicz v. Village of Bedford Park*, 528 F.3d 530 (7th Cir. 2008). Under this case, they claim that Linear could have proceeded under the ARA. They are in error. Linear's summary judgment memorandum disposes of this argument. Dkt. 37 at pg. 9. The Defendants ignore the prerequisites to administrative review: to be able to seek administrative review under the ARA, there must be an affirmative vote by municipal authorities at an *open* meeting. Here, the meeting and vote to terminate Linear occurred at a *closed* session from which Linear was barred. Linear's R. 56.1, ¶¶ 22, 26-28, Linear's Response to Defendants' R. 56.1 at ¶ 26.

Further, there must be an approved final, written decision memorializing the agency's decision. If not approved, the decision is neither valid nor final. *Baldermann v. Bd. of Trustees of the Police Pension Fund, Village of Chicago Ridge*, 2015 IL. App (1st) 140482 ¶¶ 31-34 (Ill. App. Ct. 2015). Nor can Linear seek administrative review of the unlawful decision to fire him as the Mayor is not an administrative body as defined under the ARA. *See* Linear's Memorandum Supporting Summary Judgment ("Memorandum").

The Defendants further claim that Linear's due process claims must be dismissed. However, the Defendants fail to distinguish the due process rights accruing at pre- and post-termination hearings. The Memorandum at pages 5 and 8 lays out the process required which was denied to him. The Defendants' only explanation is to argue that

Linear was entitled to only "truncated" process both pre- and post-termination, ignoring that due process rights can be "truncated" either at the pre-deprivation or post-deprivation but not both.

C.    The underlying facts are nothing like *Michalowicz.*

The Defendants premise their Motion entirely on *Michalowicz v. Village of Bedford Park*, 528 F.3d 530 (7th Cir. 2008). Doc. 32 at 6-11. Because *Michalowicz* is inapplicable, their Motion falls.

In *Michalowicz*, the plaintiff claimed a biased board conducted his post-termination hearing and not the independent committee required by state law. 528 F.3d at 534-35. The district court dismissed the plaintiff's due process claim because he could challenge the bias in Illinois courts and thus had an adequate remedy. *Id.* at 536. The Court affirmed the dismissal, finding the Administrative Review Law provided plaintiff an adequate remedy. *Id*. at 538.

Six facts distinguish *Michalowicz* from Linear's experience. First, the *Michalowicz* plaintiff received notices of the charges. 528 F.3d at 533. Second, he met Village officials and discussed the charges before termination. *Id*. Third, he had a pre-termination Village Board meeting. *Id*. Fourth, he made a statement. *Id*. Fifth, he had a post-termination hearing. *Id*. Sixth, there was a final administrative ruling to seek state court review. *Id.* at 535.

Because those six dispositive facts are absent here, *Michalowicz* does not control. Linear was simply shown the door—no notice of charges or opportunity to be heard. When Linear twice invoked his rights and sought a hearing, he was ignored. Since Linear

received no post-termination process, there was no basis for administrative review.

Moreover, it is outrageous for the Defendants to falsely claim that Linear attended and "participated in the meeting which terminated him." As Linear's Rule 56.1 statement of Linear states, and as his reply to Defendants' Rule 56.1 makes clear, Linear was excluded from the closed meeting where his termination occurred. *See* Linear's R. 56.1 paragraphs ¶¶ 22, 26-28 and Response to Defendants' Rule 56.1 at ¶ 26. When Linear invoked his rights and sought a hearing, he was ignored. Since Linear received no post-termination process, there was no basis for administrative review.

The Defendants liken this case to *Michalowicz* because they claim the Administrative Review Law provides adequate remedies. Motion at 8. This reasoning is flawed because the Defendants disregard the six distinctions with *Michalowicz*. Further, here there is no "final decision" as required by the Administrative Review Act to enable review. The Defendants' interpretation of *Michalowicz* should be rejected because it rewards the state for snubbing the statutory process.

The Defendants' additional reliance on *Lynd v. Bristol Kendall Fire Prot. Dist.*, is odd because *Lynd* specifically distinguished *Michalowicz*. 11 C 7014, 2012 WL 3069391, *16 (N.D. Ill. July 26, 2012). *Lynd* rejected the defendant's reliance on *Michalowicz* because the plaintiff alleged "no post-deprivation remedy was available." *Id*. *Michalowicz* was also distinguished in *Wilson v. University Park Bd. of Fire & Police Comm'rs*, No. 15 C 7425, 2016 WL 147916 (N.D. Ill. Jan. 13, 2016). *Wilson* found that because state laws regarding the plaintiff's claims were ignored by the University Park Village Fire & Police Board before and after termination, the due process claims could

not be dismissed. *Id*. at *7-*8. Linear's Memorandum cites the Illinois Municipal Code and defendants' violations of express provisions of it, including notice and reasons for the action, state laws ignored by University Park, which, as *Wilson* demonstrates, is no stranger to ignoring due process.

In sum, *Michalowicz* is of no utility here because the Defendants summarily fired Linear, provided no reason, and ignored his requests for a hearing.

D.     The Defendants' position defies Seventh Circuit case law.

It is undisputed that Linear was summarily fired and his requests for a hearing were ignored. The Defendants evade due process requirements by claiming that Linear could pursue an action under the Administrative Review Act. Motion at 8. In other words, the due process requirements under Linear's contract and Illinois law are optional.

Four cases establish why the Defendants' inherently troubling position falls. First, in *Chaney v. Suburban Bus Division*, the Seventh Circuit reinstated a due process claim because the plaintiff alleged he was never given notice or an opportunity to be heard before termination. 52 F.3d 623, 628-29 (7th Cir. 1995). Second is *Schultz v. Baumgart,* which explained that if an employer "summarily fired [plaintiff], affording him neither prior notice nor an opportunity to respond, due process would have been violated." 738 F.2d 231, 236 (7th Cir. 1984). Third, in *Lalvani v. Cook County*, a letter "bluntly" telling plaintiff his position was eliminated did not meet "even the minimal standards that apply when a post-termination procedure is available . . . much less when no such hearing is offered." 269 F.3d 785, 788 (7th Cir. 2001). Finally, in *Rebirth Christian v. Brizzi*, the Court reversed because "due process clearly required *some* pre-deprivation opportunity to

be heard and the appellees provided *no* opportunity for a hearing, though nothing prevented them from doing so." 835 F.3d 742, 749 (7th Cir. 2016) (emphasis in original).

If *Chaney*, *Schultz*, *Lalvani*, and *Rebirth Christian* warranted reversal, so does Linear's identically abrupt termination and the Defendants' identical defiance of due process.

E.      Linear's contract is not void.

University Park is a home rule unit and has additional powers. Ordinances were passed by the municipality acknowledging the agreements with Linear, including severance pay. Defendants' R. 56.1 Statement, paragraph 20. Defendants did not terminate their written agreement with Linear until May 26, 2015, Linear's R. 56.1, paragraph 29. That agreement ran to June 30, 2016 and included a severance provision, as did the original written agreement. Regardless of the term of the amended agreement, the severance provision is not "void." The inclusion of severance provisions in employment contracts has migrated from the private sector to the public sector. These provisions are used to attract skilled employees to serve in at-will positions, *Village of Oak Lawn v. Faber*, 378 Ill. App. 3d 458, 880 N.E.2d 659, 668 (Ill. App. 2007), and to retain key employees who might seek employment elsewhere, *City of Omaha v. City of Elkhorn*, 276 Neb. 70, 752 N.W.2d 137, 148 (Neb. 2008). Employment contracts that contain a severance provision provide important protections for managers in government service who are in the position of "serving at the pleasure of a governing body with the possibility of being dismissed for any reason at any time." *Sizemore v. City of Madras*, No. 02-74-KI, 2005 WL 273006, at *9 (D. Or. Feb. 2, 2005).

Courts have concluded that a provision for severance pay in a government employee's employment contract is not inconsistent with an employee's at-will status. Thus, at-will government employees who have a severance pay provision in their employment contract may still be terminated at any time for any reason. However, the government employer must honor its contractual obligation to pay severance benefits if the employee is otherwise entitled to them. *McGregor v. Bd. of Comm'rs*, 674 F. Supp. 858, 861 (S.D. Fla. 1987); *Stephenson v. City of Claycomo*, 246 S.W.3d 22, 30 (Mo. Ct. App. 2007) (holding that a municipality owed a fire chief severance benefits equal to five years of his gross salary); *Myers v. Town of Plymouth*, 522 S.E.2d 122, 124 (N.C. Ct. App. 1999) (upholding a severance provision in an employment contract even though it "may have deterred" the municipality from terminating the employee). In these circumstances, the provisions in a government employee's employment contract regarding the length of the term of employment and severance benefits are not in conflict and may be given separate effect. *Dice v. City of Montesano*, 128 P.3d 1253, 1258 (Wash. Ct. App. 2006).

However, where the municipality has the authority to enter into the agreements with an official, but a portion thereof may be beyond its power or the power may have been irregularly exercised, that contract is not void if the result would give the municipality an unconscionable advantage over the other party. *Stahelin v. Board of Education, School District No. 4, DuPage County, Illinois*, 230 N.E.2d 465, 472 (1967); *Village of Oak Lawn v. Faber*, 880 N.E.2d 659, 675 (2007) (noting an employment contract may slightly exceed the term of the municipality's officers to bridge the

transitional period as new members take office where the employee is otherwise terminable at will).

Here, there is no question the Village could enter into employment agreements with Linear. Indeed, they entered into a new agreement with him, and passed ordinances implementing them. On termination, Linear was entitled under the Amendment to Village Manager Employment Agreement, Section 1, B (14) to six months of regular salary. He was also entitled under his original Agreement to six months' severance. Linear's R. 56.1, Ex. C, section 1, B 15 (a-c).

The question is properly whether the municipality had the authority to put a severance provision in either agreement. It did as *Faber* and other courts have noted. Such severance provisions are standard in modern employment contracts and should be enforced even if the remainder of the agreement is "void." And in *Faber* the severance period of nine months was included in his original agreement, just as severance terms resulting in 6 months of severance pay here were included in Linear's original and amended agreements, and therefore are enforceable regardless as to whether the Amended Agreement is void. The applicable language in the original agreement provides that the Employee shall receive any unpaid balance of earned salary and benefits due him on the effective date of termination. These have not been paid, just as the Defendants have not paid Linear for his actually work since before he was terminated. Payments for his pension and other funds has yet to be made. As such, the severance provisions are not void under *Faber* and must be honored.

CONCLUSION

Because due process is not optional, the Court should deny the Defendants'

Motion for Summary Judgment.

January 30, 2017                                 Respectfully submitted,


                                                <u>s/John T. Moran</u>

                                                John T. Moran
                                                The Moran Law Group
                                                309 West Washington, Ste. 900
                                                Chicago, Illinois 60606
                                                (312) 630-0200


                                                Christopher Keleher
                                                The Keleher Appellate Law Group
                                                180 North LaSalle Street, Ste. 3700
                                                Chicago, Illinois 60601
                                                (312) 981-0347

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January 2017, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which sent the notification to all counsel of record.

s/John T. Moran

John T. Moran
The Moran Law Group
309 West Washington, Ste. 900
Chicago, Illinois 60606
(312) 630-0200