# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 17-1940

LAFAYETTE LINEAR,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF UNIVERSITY PARK, ILLINOIS, and VIVIAN COVINGTON, MAYOR,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 7653 — **Harry D. Leinenweber**, *Judge*.

ARGUED FEBRUARY 14, 2018 — DECIDED APRIL 17, 2018

Before EASTERBROOK and ROVNER, *Circuit Judges*, and GRIESBACH, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. University Park hired Lafayette Linear as its Village Manager under a four-year contract that ran through May 2015, concurrent with the term of

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

the Village's Mayor. In October 2014 the Village extended Linear's contract for a year. But by spring 2015 relations between Linear and the Village's elected officials had soured. In April 2015 Mayor Covington was reelected, and her new term began in May. That month the Board of Trustees decided that Linear would no longer be Village Manager. His contract provides for six months' severance pay if the Board discharges him for any reason except criminality. But the Village has taken the position that the contract's extension was forbidden by Illinois law and that it owes Linear nothing, because his only valid term expired in May 2015.

Linear contends in this federal suit under 42 U.S.C. §1983 that the Board violated the Due Process Clause of the Fourteenth Amendment by not giving him a hearing before his discharge. The Village replies that he has not been discharged; it just declined to renew his contract—and Linear does not contend that he had a legitimate claim of entitlement to a renewal. Compare *Board of Regents v. Roth*, 408 U.S. 564 (1972), with *Perry v. Sindermann*, 408 U.S. 593 (1972). The district court decided that, as a matter of Illinois law, the extension past May 2015 was invalid. The judge understood 65 ILCS 5/3.1-30-5 and 5/8-1-7 to prohibit any contract for a village manager from lasting beyond the end of a mayor's term of office. As a result, the district court held, the Village did not deprive Linear of a property interest, and without a property interest he had no federal right to a hearing.

The parties' briefs debate the meaning of these two state statutes and whether other statutes (such as those giving the Village home-rule powers) create exceptions to them. But if the core dispute concerns state law, why is this case in federal court? Linear and the Village are citizens of Illinois; the

No. 17-1940 3

absence of diversity means that only a claim arising under federal law allows adjudication. Linear has of course *asserted* a federal theory: that the Due Process Clause entitles him to a hearing. But that seems to be a makeweight, a way of getting a state-law dispute resolved by a federal judge.

Sometimes a statute or established practice creates a legitimate claim of entitlement to keep one's job, which amounts to a property interest that under *Roth* and its successors requires a hearing before the employee can be fired. But Linear has never had a legitimate claim of entitlement to remain as Village Manager. His contract allowed the Village to fire him without cause. His entitlement was not to stay in a policy-making job—no unit of government can contract away its right to have the voters and their elected representatives set public policy—but to receive the contracted-for severance pay. So Linear could not have a federal right to a hearing before someone else took his job; he has at most a right to a hearing to determine whether he gets six months' severance pay. And that's a question of Illinois law only.

A contractual right to severance pay is a form of property interest, but this does not imply that a hearing must precede the municipality's decision to have a new Village Manager. Severance pay cannot be transmuted to a sinecure, and elected officials' ability to replace high officials frustrated, by the fact that pre-termination hearings take time. If Congress promised Cabinet officers six months' pay if fired by the President without cause, that would not entitle the officer to keep the job while disputes about "cause" were resolved. Cf. *Myers v. United States*, 272 U.S. 52 (1926).

Many years ago we held that, for someone who relies on a property interest created by a contract with a public body,

Case: 1:15-cv-07653 Document #: 61 Filed: 05/09/18 Page 4 of 6 PageID #:832
Case: 17-1940    Document: 00713214247    Filed: 05/09/2018    Pages: 6

4    No. 17-1940

the process due when the government arguably has broken its promise is the opportunity to seek damages from a state court. *Mid-American Waste Systems, Inc. v. Gary*, 49 F.3d 286 (7th Cir. 1995). That conclusion has been repeated many times since. See, e.g., *Kay v. Board of Education*, 547 F.3d 736 (7th Cir. 2008); *Blackout Sealcoating, Inc. v. Peterson*, 733 F.3d 688 (7th Cir. 2013). Linear has not contended that he would be unable to obtain a hearing from a state court, which could award severance pay or another appropriate remedy. As long as the state courts are open, they provide the right forum for the parties' dispute about whether the extension past May 2015 was valid.

Linear resists this conclusion by contending that both his contract and an ordinance entitle him to a hearing before his removal, despite the Village's entitlement to fire him for any reason (that is, without cause). The problem with that argument is that procedural rights based on a contract or an ordinance have nothing to do with the Due Process Clause, which protects substantive interests—rights in life, liberty, or property—rather than state-created procedures. The Supreme Court made that clear in *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983), and *Hewitt v. Helms*, 459 U.S. 460, 471 (1983), which rejected the kind of argument that Linear makes: that procedures required by state law create property interests and hence lead to a federal requirement that the state procedures be used. State-law rights can't be bootstrapped into federal rights so easily. Countless times the Justices have rejected contentions that the federal Constitution requires states to follow their own law. See, e.g., *Snowden v. Hughes*, 321 U.S. 1, 11–13 (1944) (an argument that a failure to follow procedures established by state law thereby violates the Constitution is so insubstantial that it does not establish fed-

Case: 1:15-cv-07653 Document #: 61 Filed: 05/09/18 Page 5 of 6 PageID #:833
Case: 17-1940     Document: 00713214247     Filed: 05/09/2018     Pages: 6

No. 17-1940 5

eral jurisdiction); *Beck v. Washington*, 369 U.S. 541, 554–55 (1962); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009); *Swarthout v. Cooke*, 562 U.S. 216, 220–22 (2011). We regularly disparage arguments of the sort that Linear advances. See, e.g., *Babchuk v. Indiana University Health, Inc.*, 809 F.3d 966, 970 (7th Cir. 2016); *Sung Park v. Indiana University School of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012); *Weinstein v. University of Illinois*, 811 F.2d 1091, 1097–98 (7th Cir. 1987). The state-procedure-requires-federal-procedure theme fares no better today.

In another decision released today, we conclude that a different public employee asserting a right to a hearing before discharge is entitled to litigate in federal court. *Breuder v. Board of Trustees*, No. 17-1577 (7th Cir. Apr. 17, 2018). The reasons for the disparate outcomes bear emphasis.

First, Breuder had a contractual right to keep his job unless he committed misconduct; Linear lacks such a right, so that a hearing was not required to protect an entitlement to the job (as opposed to an entitlement to receive damages). Second, accusations of misconduct accompanied Breuder's termination, creating a federal right to a name-clearing hearing independent of any contractual rights under state law. See *Codd v. Velger*, 429 U.S. 624 (1977). Third, the right to a hearing for Breuder rested on federal law, while Linear locates that right in the contract and state law, subjects on which only a state court can be authoritative.

Linear's complaint presents claims under state as well as federal law. For the reasons we have explained, the federal claim rests on a mistaken appreciation of the role the Constitution plays in enforcing state-law rights. The district court relinquished supplemental jurisdiction of Linear's state-law claims. The state judiciary is free to address those claims

6                                                                      No. 17-1940

from scratch; the district judge's conclusions about the effects of 65 ILCS 5/3.1-30-5 and 5/8-1-7 lack both preclusive and precedential effect.

AFFIRMED